IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-30411
Summary Calendar

_____

HAYWARD J. MITCHELL; CAROLYN H. MITCHELL,

Plaintiff-Appellees,

versus

ST. PAUL FIRE AND MARINE INSURANCE CO.; et al.,

Defendants

TENET HEALTHSYSTEMS HOSPITALS, INC., d/b/a/
NORTHSHORE REGIONAL MEDICAL CENTER,

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 98-CV-1898
--------------------
March 27, 2000

Before JOLLY, JONES and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Appellant Tenet Healthsystems Hospitals, Inc., d/b/a

Northshore Regional Medical Center ("Northshore") appeals from

the jury's special finding that the claim of appellees Hayward J.

Mitchell and Carolyn H. Mitchell (collectively "the Mitchells")

was not prescribed.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

The Mitchells secured this jury verdict after a trial held from March 22-25, 1999.  The jury rendered judgment in favor of the Mitchells and against Mr. Mitchell's treating physician, Dr. Madaelil G. Thomas ("Dr. Thomas"), his insurer, St. Paul Fire and Marine Insurance Company, and Northshore.  Only Northshore appeals the verdict.

The parties agree that, pursuant to Louisiana law, "the prescriptive period commences when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim."  Luckett v. Delta Airlines, Inc., 171 F.3d 295, 300 (5th Cir. 1999).  Northshore insists that sufficient notice to call for an inquiry existed on March 9, 1995, when Dr. Thomas, ordered a CAT scan at 7:00 am, and the hospital did not perform the scan until 4:30 pm of that day.  The Mitchells counter that sufficient notice did not exist until April, 1996, when Mrs. Mitchell read some literature about stroke victims that led her to believe that the delay in performing the CAT scan may have led to enhanced damage from the stroke Mr. Mitchell suffered.

We hold that sufficient evidence supports the jury's finding that the Mitchells were not on notice that they should conduct an inquiry into the hospital's delay in providing the CAT scan until April, 1996.  Neither Mrs. Mitchell, nor her son or daughter, graduated from high school; all obtained their GEDs later.  Mrs. Mitchell and her son work in the family sewer business; the daughter is a homemaker.  Mrs. Mitchell testified that she thought the CAT scan was important because Dr. Thomas ordered it.

She had no idea that it might play a critical role in reducing the amount of brain damage Mr. Mitchell would suffer from his stroke. When the hospital staff failed to perform the CAT scan at 7:00 am as ordered, Mrs. Mitchell sought an explanation. The hospital told her the CAT scan was broken. Though the CAT scan did not, in fact, break until 10:00 am, and though it was repaired soon thereafter, Mrs. Mitchell had no reason to doubt the hospital staff's explanation of the delay. Moreover, Mrs. Mitchell had no knowledge of Northshore's protocol, which dictated that, in the event that the CAT scan breaks, emergency CAT scans should be performed at a hospital facility in Slidell, a mile down the road.

In short, Mrs. Mitchell was not on notice that the delay in providing the CAT scan was anything other than a routine event in an overcrowded hospital until April, 1996, when she learned of the vital role CAT scans play in preventing extraordinary harm to stroke victims. At that point, she still did not know that the Northshore staff had told her the CAT scan was broken before it actually did break, had conducted routine CAT scans while her husband slipped into a coma, and had failed to transport Mr. Mitchell to Slidell for a CAT scan during the time period when the CAT scan really was inoperative. Nonetheless, upon learning of the CAT scan's critical function in prevention of harm to stroke victims, Mrs. Mitchell then was on notice that an inquiry into the delay was necessary. Only upon attaining that information did the prescriptive period begin to run.

We need not address Northshore's contention that the district court wrongfully denied it summary judgment on the issue of prescription. "[T]his Court will not review the pretrial denial of a motion for summary judgment where on the basis of a subsequent full trial on the merits final judgment is entered adverse to the movant." Black v. J.I. Case Co., Inc., 22 F.3d 568, 570 (5th Cir. 1994).

As sufficient evidence supports the jury's verdict in the Mitchell's favor, we affirm.

AFFIRMED.